IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRITTON ESPOSITO; CHRISTIAN FRESNO;
BENJAMIN KUTYLO; ALLYSON ESPOSITO;
and ALLYSON ESPOSITO, as mother and
next friend of JANIE DOE, a minor                                           PLAINTIFFS

V.                            CASE NO. 5:20-CV-5204

AIRBNB ACTION, LLC; AIRBNB PAYMENTS,
INC.; AIRBNB, INC.; PUERTO PANAL FARM
CLUB PROPERTY ASSOCIATION AND
ASSOCIATION BOARD; MATIAS JOSE
FERNANDEZ; LINDSAY OLSON; and OTHER
OWNER(S) AND/OR AIRBNB HOSTS OF FARM
HOUSE CHAKRA 82, BUENOS AIRES, ARGENTINA                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss and Memorandum of Law in Support (Docs. 71 & 75) filed by Defendants Puerto Panal Farm Club Property Association and Association Board, Matias Jose Fernandez, and Lindsay Olson (collectively, "Argentine Defendants"). Plaintiffs filed a Response in Opposition (Doc. 81), and Argentine Defendants filed a Reply (Doc. 84). Because the Court concludes that it does not have personal jurisdiction over any of the Argentine Defendants, the Motion to Dismiss (Doc. 71) is **GRANTED**.

### I. BACKGROUND

Plaintiffs Allyson Esposito, her husband Benjamin Kutylo, and their minor daughter are residents of Benton County, Arkansas. Plaintiffs Britton Esposito and Christian Fresno are residents of Argentina. In November 2019, Allyson was in Arkansas when she used the Airbnb platform to make a reservation for two nights on behalf of herself and the other Plaintiffs at a property outside of Buenos Aires, Argentina referred to as the

1

Farm House. The Farm House is located in the Puerto Panal neighborhood, a gated community with security guards overseen by Defendant Puerto Panal Farm Club Property Association and Association Board ("the Association"), which describes itself as a homeowners' association. Defendants Matias Jose Fernandez and Lindsay Olson own the Farm House, and Lindsay offers it for rent on the Airbnb platform. Lindsay is an American citizen, but she and Matias are both residents of Argentina. On the night of November 21, 2019, shortly after arriving at the Farm House, Plaintiffs were assaulted and robbed by four masked men. Plaintiffs allege that the masked men were notified of their presence in the neighborhood and permitted access by the security guards. Once the assailants left the house, Plaintiffs were able to contact the police, who eventually arrived to investigate. The security guards were subsequently arrested. Plaintiffs sought medical attention at hospitals in Buenos Aires, and then Allyson, Benjamin, and their minor daughter returned to Arkansas. Britton and Christian remained in Argentina, where they reside.

      Plaintiffs initially filed suit in the District Court for the Northern District of Illinois, making claims against Airbnb and Argentine Defendants. That court transferred the case to the Western District of Arkansas. This Court then granted a motion to compel arbitration as to the claims against the Airbnb Defendants. *See* Doc. 78. The remaining claims against the Argentine Defendants are for negligence, negligent hiring/retention, vicarious liability, violation of right of privacy, and deceptive advertising in violation of the federal Lanham Act, 15 U.S.C. § 1125.

      Argentine Defendants now move to dismiss Plaintiffs' claims against them for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

In the alternative, Argentine Defendants seek dismissal for insufficient service of process and forum non conveniens or to stay proceedings while Plaintiffs' claims against Airbnb proceed in arbitration. In response, Plaintiffs argue that the Court may exercise specific personal jurisdiction over Lindsay because she intentionally entered into a contract—the rental agreement—with Allyson in Arkansas and because "Plaintiffs' lives have been and will continue to be impacted every single day in Arkansas" by the trauma they experienced in Argentina. (Doc. 81, p. 7). Plaintiffs offer no basis for the Court to exercise personal jurisdiction over Matias or the Association. Since the Court agrees with Argentine Defendants that it does not have personal jurisdiction over any of them, it does not address their other arguments.

## II.  LEGAL STANDARD

A plaintiff must state enough facts in a complaint to support a reasonable inference that the defendant is subject to the jurisdiction of the forum. "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). "[T]he plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (internal quotation marks omitted). When the defendant is not a resident of the forum state, the district court may only exercise jurisdiction if "personal jurisdiction exists under the forum state's long-arm statute and . . . the exercise of personal jurisdiction is consistent with due process." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). Under Arkansas's

long-arm statute, "the exercise of personal jurisdiction is limited only by federal constitutional law." *Yanmar Co., Ltd. v. Slater*, 386 S.W.3d 439, 443 (Ark. 2012).

Constitutional due process requires that a non-resident defendant "have 'minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Pangaea v. Flying Burrito*, 647 F.3d 741, 745 (8th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Sufficient minimum contacts requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Fastpath*, 760 F.3d at 821 (quoting *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). The nature of the contacts between the defendant and the forum must be purposeful and "must not arise due to mere fortuity." *Pangaea*, 647 F.3d at 745. "Sufficient contacts exist when the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *Soo Line R.R. Co. v. Hawker Siddeley Can., Inc.*, 950 F.2d 526, 528 (8th Cir. 1991) (internal quotation marks omitted).

## III.  DISCUSSION

First, Plaintiffs make no argument for this Court's personal jurisdiction as to Matias or the Association, nor does the Court find that either Matias or the Association has any contacts with Arkansas. Matias submitted an affidavit attesting that while he co-owns the Farm House with his wife, Lindsay, he does not "operate, manage, or control the listing" of the Farm House on Airbnb, "participate or engage in the listing" on Airbnb, or operate an account on any other platform to rent the Farm House. (Doc. 75-2, ¶¶ 2, 11–13). On the Airbnb listing, Lindsay is the only host. *See* Doc. 72-2, p. 8. A legal representative

4

of the Association also submitted an affidavit attesting that the Association "conducts its operations and renders its services solely in the Zarate Province of Buenos Aires." (Doc. 75-3, ¶ 4). The affidavit asserts that the Association has no form of contact with Arkansas. Since Plaintiffs offer no facts to meet their burden of establishing that Matias or the Association has any contacts with Arkansas, the Court concludes that it does not have personal jurisdiction over either Matias or the Association.

As to Lindsay, Plaintiffs argue that the contract between Allyson and Lindsay coupled with the harm that Allyson, Benjamin, and their daughter continued to suffer when they returned to Arkansas are sufficient to establish minimum contacts with this forum. Plaintiffs offer two legal bases for this argument. First, Plaintiffs assert that the *Calder* effects test from *Calder v. Jones*, 465 U.S. 783 (1984), supports a finding of minimum contacts. Second, Plaintiffs argue that the approach to assessing the adequacy of internet contacts laid out in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), also establishes that Lindsay has minimum contacts with Arkansas. The Court disagrees. Neither of these standards for assessing minimum contacts allows the Court to exercise personal jurisdiction over Lindsay.

### A.  *Calder* Effects Test

A plaintiff who has suffered an intentional tort can establish specific personal jurisdiction as to the tortfeasor by showing that the defendant's acts "(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (modification adopted). This is known as the *Calder* effects test. In *Walden v. Fiore*, the Supreme Court clarified

that "[t]he proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation.  And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."  571 U.S. 277, 291 (2014) (internal citation and quotation marks omitted).  In other words, the same principles of due process relevant to personal jurisdiction generally also undergird the *Calder* effects test analysis.  "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."  *Id.* at 286.  "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  *Id.* at 285.

Lindsay's intentional conduct, Plaintiffs allege, is entering into a contract with Allyson for the rental of the Farm House while Allyson was in Arkansas.  However, the Eighth Circuit has held that a "contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state."  *Fastpath*, 760 F.3d at 821.  "Instead courts should consider the terms of the contract and its contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists."  *Id*.  Here, while Allyson was in Arkansas when she entered into a rental agreement for the Farm House, the contract was for services that would be provided only in Argentina—that is, the stay at the residence—and the agreement was narrow in scope, providing for a two-night stay at the Farm House.  There was no further connection between Arkansas and the performance

6

of the contract. In fact, as discussed further below, Lindsay did not even know that Allyson was an Arkansas resident when the parties entered into the rental agreement.

To their credit, Plaintiffs recognize that the fact of the contract alone is not a sufficient basis for personal jurisdiction. *See* Doc. 81, p. 6. They argue, however, that the additional fact that Allyson, Benjamin, and their daughter continue to experience the effects of their trauma in Arkansas, when combined with the fact that Allyson entered into the rental agreement while in Arkansas, creates adequate minimum contacts as to Lindsay. The facts of *Walden* are instructive for understanding why this argument is unpersuasive.

In *Walden*, the plaintiffs were residents of Nevada who had money seized from them by an agent of the Drug Enforcement Agency while passing through the airport in Atlanta, Georgia. During an interview with the agent, the plaintiffs identified themselves as being residents of Nevada. The Ninth Circuit held that the district court in Nevada had personal jurisdiction over the agent for claims that he provided a false affidavit in seeking the forfeiture of the funds seized. The court applied the *Calder* effects test and concluded that the agent "expressly aimed" his submission of the allegedly false affidavit at Nevada because he knew it would result in "foreseeable harm" to residents of Nevada. *See Walden*, 571 U.S. at 282.

The Supreme Court reversed, holding that the fact that the plaintiffs suffered from the agent's actions while in Nevada could not provide a basis for personal jurisdiction. Instead, the Supreme Court emphasized, "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 290. The plaintiffs "lacked access to their

7

funds in Nevada not because anything independently occurred there, but because Nevada is where respondents chose to be at a time when they desired to use the funds seized by petitioner." *Id*. The Court pointed out that the plaintiffs "would have experienced this same lack of access in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had." *Id*.

Here, as in *Walden*, Allyson, Benjamin, and their daughter suffered harm in Arkansas because of their unilateral choice to return to Arkansas and not because of any aspect of Lindsay's conduct. Thus, under *Walden*, the Court cannot conclude that Lindsay has engaged in affirmative conduct to give her minimum contacts with Arkansas.

### B. *Zippo* Internet Contacts

Courts in the Eighth Circuit have found the test laid out in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), instructive when considering the sufficiency of contacts over the internet. *See Johnson*, 614 F.3d at 796. In *Zippo*, the court "created a 'sliding scale' to measure the likelihood of personal jurisdiction [that] runs from active contract formation and repeated transmission of computer files to mere posting of information on a website." *Id*. Because the Airbnb platform permits direct contact between hosts and potential guests and allows them to finalize their rental agreements through the Airbnb website, the Court recognizes that the contacts fall on the more "active" end of the spectrum. However, where the interaction fell on the sliding scale of interactivity was not the end of the court's inquiry. As discussed below, the *Zippo* court also considered the intentionality and volume of the defendant's contacts and where the alleged harm occurred. Plaintiffs' reliance on *Zippo* is therefore misplaced.

8

*Zippo* dealt with a trademark dispute between a manufacturer and a website with the same name. The website, which the court referred to as "Dot Com," provided a subscription-based news service with both free and paid subscriptions available. *Zippo Mfg.*, 952 F. Supp. at 1122. The district court denied Dot Com's motion to dismiss for lack of personal jurisdiction. The court held that Dot Com's contacts with Pennsylvania were intentional and not fortuitous because the Dot Com processed applications for paid subscriptions for Pennsylvania residents and made agreements with Internet providers in Pennsylvania so that their Pennsylvania subscribers could access the news service. *Id*. at 1126. Those contacts were also sufficiently substantial because approximately three thousand of Dot Com's subscribers were residents of Pennsylvania. *Id.* at 1127. Finally, the court noted that the cause of action arose out of Dot Com's contract to provide news service messages to Pennsylvania residents: "When these messages are transmitted into Pennsylvania and viewed by Pennsylvania residents on their computers, there can be no question that the alleged [trademark] infringement and dilution occur in Pennsylvania." *Id*.

Here, in contrast, Plaintiffs have not provided any evidence that Lindsay knew she had entered into a contract with an Arkansas resident when Allyson made a reservation at the Farm House. In fact, Allyson's profile on Airbnb indicated that she resides in Boston and lists a phone number with a Chicago area code. *See* Doc. 72-3. Lindsay also asserts that Allyson "is my first and only customer from the State of Arkansas." (Doc. 75-1, ¶ 13). Unlike in *Zippo*, there is no evidence that would allow this Court to conclude that Lindsay intentionally targeted residents of Arkansas in advertising the Farm House or even that she knowingly provided a service to a resident of Arkansas in renting to Allyson.

Furthermore, unlike the trademark infringement and dilution, which occurred in Pennsylvania when the messages were transmitted there, Lindsay's allegedly tortious conduct occurred in Argentina when inadequate security was provided at the Farm House, not in Arkansas.

Another district court considered very similar facts in *Labollita v. Home Rental Connections Ltd.*, 2017 WL 2569522 (D. Mass. June 13, 2017), and reached the same conclusion. The plaintiffs were Massachusetts residents who used an internet platform to secure a vacation rental in Paris, France. When the plaintiffs arrived at the rental in Paris, one of them was injured in a fall on the rental's stairs. They sued both the French owner of the apartment and the London-based company with whom the owner contracted to advertise the apartment and coordinate with guests, referred to as HRC. In considering the plaintiffs' contract and breach of warranty claims, the court found that HRC's contacts with Massachusetts were insufficient to support personal jurisdiction, noting,

> The parties never contemplated and the contract did not provide for performance of *any* services by [HRC] in Massachusetts. Rather, the parties always intended all of HRC's performance to occur in France. The contract was short, obligating HRC to provide Plaintiffs the apartment for seven days, the communication between the parties was limited to signing the contract and clarifying the details of Plaintiffs' stay. Additionally, HRC did not target either Plaintiffs or Massachusetts.

*Id*. at *5 (emphasis in original). As to the plaintiffs' negligence claims, the court observed that "[t]hese claims have no relationship to Massachusetts beyond the fact the Plaintiffs are from Massachusetts and made the reservation from Massachusetts." *Id.* at *6. The court concluded that "[t]his is clearly insufficient to allow this Court to exercise jurisdiction as Plaintiffs have not shown that Defendants purposefully availed themselves of the protections of the laws of Massachusetts." *Id.*

Ultimately, the law is clear that due process "requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Here, Plaintiffs have not met their burden to show that any of the Argentine Defendants has more than a coincidental and tenuous connection to Arkansas, which is insufficient to establish personal jurisdiction.

## IV.  CONCLUSION

In summary, Argentine Defendants' Motion to Dismiss (Doc. 71) is **GRANTED**.  The claims against Defendants Matias Jose Fernandez, Lindsay Olson, and Puerto Panal Farm Club Property Association and Association Board (Counts I–IV, VII–X, XIII–XVI, XIX–XXII, XXV–XXVIII and Counts XXXII and XXXIII as to those Defendants) are **DISMISSED** for lack of personal jurisdiction.  The claims previously compelled to arbitration remain stayed.  The Clerk of Court is directed to **ADMINISTRATIVELY TERMINATE** the case while arbitration is pending.  The remaining parties may move to reopen the case when arbitration has been completed.  The case management hearing set for February 8, 2021, at 10:30 a.m. is also **TERMINATED**.

**IT IS SO ORDERED** on this 5th day of February, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE