**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**BRITTON ESPOSITO; CHRISTIAN FRESNO;
BENJAMIN KUTYLO; ALLYSON ESPOSITO;
and ALLYSON ESPOSITO, as mother and
next friend of JANIE DOE, a minor**                                    **PLAINTIFFS**

**V.**                                    **CASE NO. 5:20-CV-5204**

**AIRBNB ACTION, LLC;
AIRBNB PAYMENTS, INC.;
and AIRBNB, INC.**                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court are a Motion to Dismiss and Memorandum of Law in Support (Docs. 95 & 96) filed by Defendants Airbnb Action LLC, Airbnb Payments, Inc., and Airbnb, Inc. (collectively, "Airbnb"). Plaintiffs filed a Response in Opposition to the Motion (Doc. 107), and Airbnb filed a Reply (Doc. 110). On May 24, 2022, the Court held a hearing and entertained oral argument on the Motion. At the conclusion of the hearing, the Court took the Motion under advisement.

Now that the Court has had a full opportunity to consider the Amended Complaint, the parties' briefing on the Motion to Dismiss, and counsel's oral argument, the Motion is **GRANTED** for the reasons explained below.

### I.      BACKGROUND

According to the Amended Complaint, Plaintiffs Britton Esposito and Christian Fresno were married in Buenos Aires, Argentina, on November 14, 2019. Britton is an American citizen, and Christian is Argentinian. In attendance at the wedding were Britton's family members from Arkansas: her sister, Allyson Esposito, Allyson's husband, Benjamin Kutylo, and Allyson and Benjamin's young daughter, Janie Doe.

Before traveling to Argentina, Allyson decided to secure a vacation rental near Buenos Aires for her immediate family and the newlyweds to relax and unwind after the wedding.  Allyson accessed the Airbnb platform from her home in Arkansas and found a listing for a spacious private residence in a gated community called "Puerto Panal."  The listing described the home as follows:

> One hour from Buenos Aires, on 5 acres, housing 6 guests, 4 bedrooms, 7 beds, 2.5 baths, private pool, WIFI and the television, Netflix, indoor stairwell slide, one-of-a-kind finishing details and pieces, hosted by Lindsay with a 100% 5-star location and experience rating. The neighborhood, Puerto Panal, has a large community pool, restaurant walking and riding paths, polo field, tennis courts, access to the river, "tons of tons of privacy and open views. (O)ur property is within a gated farm club. There is security gate at the entrance and monitoring throughout the neighborhood. The streets have speed monitoring and infractions will occur fines for speeds over 30 km per hour. If you plan to have day visitors, we allow up to 4 visitors with prior approval. We will need the names and document numbers of each person in your group (including visitors) to allow them access into the neighborhood. The neighborhood also requires the renter to sign a rental contract/reglamento de convivencia before arrival. Our neighborhood requires that all renters sign a rental contract/reglamento de Convivencia prior to rental date and bring the signed copy at check-in to the entrance of the neighborhood. Renters must also provide names and DNI of every person in their party.

(Doc. 92, p. 15, ¶ 56).  Allyson reserved the home for a two-night stay.

On November 21, 2019, exactly one week after the wedding, the Plaintiffs traveled by taxicab to the home that Allyson had rented on Airbnb.  They arrived at the security gate at the entrance of the Puerto Panal neighborhood, and the taxi driver gave the guards his personal and vehicle information, while the adult Plaintiffs told the guards their names.  The guards did not ask the Plaintiffs for their passports or other personal identification, but they seemed to be aware that most of the Plaintiffs were from the United States.  As a condition of staying at the home, the owners had required the Plaintiffs to

provide them with their full names and their passport numbers. Plaintiffs claim they used the Airbnb platform to send this information to the property owners.

The guards directed the taxicab through the security gate to the rental home.  They did not provide Plaintiffs with any door keys. When Plaintiffs arrived at the home, they noticed the sliding doors were unlocked.  Security cameras appeared to be positioned around the home, but Plaintiffs found out later that those cameras were not hooked up to a security system and did not function.  Plaintiffs settled themselves into the home, unpacked, and made themselves some snacks.  Later in the evening, they suffered a harrowing home invasion in which they were terrorized and robbed by four masked men carrying guns and knives.

The intruders entered the house, tied and gagged the four adults, sexually assaulted Allyson and Britton, hit Benjamin on the head with a gun, and threatened to murder Allyson and Benjamin's toddler and dump her in a field.  The masked men eventually left the house, and Plaintiffs freed themselves and called the police for help. Eventually, the police arrived, and the security guards, who had helped the intruders gain entry to the gated community, were arrested.

On May 5, 2020, Plaintiffs filed suit in the District Court for the Northern District of Illinois against Airbnb and several Argentine defendants, including the couple who owned the rental home and the Puerto Panal Property Owners' Association.  Airbnb moved to transfer the case to the Western District of Arkansas, and the Illinois court granted that motion in an order (Doc. 44) filed on November 20, 2020. The case was then transferred to the undersigned, and an initial scheduling order issued on December 3, 2020.  On December 16, Airbnb filed a motion to compel arbitration, which this Court granted.  *See*

Doc. 78.   The remaining claims against the Argentine defendants were eventually dismissed for lack of personal jurisdiction.  *See* Doc. 85.  On February 5, 2021, the Court directed the Clerk to administratively terminate the case pending the conclusion of arbitration proceedings between Plaintiffs and Airbnb.

About a year later, on January 18, 2022, Plaintiffs moved to reopen this case.  It appears Plaintiffs never pursued their claims in arbitration.   Instead, shortly after the motion to compel arbitration was granted, Plaintiffs discovered that Airbnb had publicly announced a change to their official arbitration policy:  All sexual assault claims brought against Airbnb would no longer be subject to mandatory arbitration. Plaintiffs believed that since Allyson and Britton had been sexually assaulted by the masked assailants in the rental home in Argentina, the Plaintiffs' lawsuit against Airbnb should be permitted to proceed in this Court—bypassing arbitration.  Airbnb agreed with Plaintiffs and waived their right to arbitrate, which prompted the Court to reopen the case and direct Plaintiffs to file an amended complaint.  The Amended Complaint (Doc. 92) was filed on March 3, 2022.  And just two weeks later, on March 17, Airbnb moved to dismiss all claims in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Amended Complaint contains 13 counts.  Counts I, III, V, VII, and IX are direct negligence claims brought by each of the five Plaintiffs.   Counts II, IV, VI, VIII, and X assert the "vicarious liability" of Airbnb as to each of the five Plaintiffs.[1]   Count XI is a claim for civil RICO, which Plaintiffs agree is subject to dismissal.  *See* Doc. 107, p. 35.

---

[1] At the motion hearing, Plaintiffs' counsel conceded that "vicarious liability" is not a standalone cause of action.  He explained that Plaintiffs' intent in bringing Counts II, IV, VI, VIII, and X was to explain why Airbnb should be held liable for the tortious conduct committed by the Argentine non-parties (i.e., the owners of the rental house and the property owners' association).

Count XII is a claim for the violation of Plaintiffs' right to privacy.  Lastly, Count XIII is a Lanham Act Claim for false advertising under 15 U.S.C. § 1125.  Below the Court will examine each claim in turn.

## II.   LEGAL STANDARD

To survive a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678)). In ruling, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted).

Still, the complaint must contain sufficient facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.* A court is not required to "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

## III.   DISCUSSION

### A.  Negligence

Before examining the facts made in support of this claim, the Court must first determine which state's law applies.  Airbnb argues in favor of applying Arkansas law,

while Plaintiffs argue in favor of California law.[2]  Arkansas's connection with the case arises from the fact that Allyson, an Arkansas citizen, accessed the Airbnb platform and reserved the rental property from her home in Arkansas.  California's connection with the case arises from the fact that Airbnb is headquartered there.[3]

This case was originally filed in Illinois and then transferred to this Court on Airbnb's motion pursuant to 28 U.S.C. § 1404(a). When a case is transferred to a new court under § 1404(a), the transferor state's choice-of-law rules will govern the dispute. *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990) ("[T]he transferee court must follow the choice-of-law rules that prevailed in the transferor court.").  Given that the "transferor state" here is Illinois, the following choice-of-law rules apply:

> Illinois law, which "applies the choice-of-law analysis from the Restatement (Second) of Conflict of Laws[,]" *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1049 (7th Cir. 2016), "tells us that the law of the state with the 'most significant relationship to the occurrence and the parties' applies in the event of a conflict[,]" *Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019) (quoting *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 61, 316 Ill. Dec. 522, 879 N.E.2d 910 (Ill. 2007)). But the "most significant relationship" test does not come into play unless there is difference in law that would affect the outcome—absent such a

---

[2] Airbnb suggests in its briefing that Illinois law may yet be a third possibility in the choice-of-law analysis. However, the case's only factual connection to Illinois stems from Plaintiff Britton Esposito's claim that she is "domiciled" in Cook County, Illinois. (Doc. 92, p. 4, ¶ 11).  At the same time, the Amended Complaint states that Britton is "a resident of Buenos Aires, Argentina where she attends school, and is the wife of Christian," *id.* at p. 5, ¶ 17.  Britton's citizenship is unclear from the face of the Amended Complaint, but the Court sees no particular need to resolve the question of her citizenship for purposes of determining which state's law applies—especially when neither party argues in favor of applying Illinois law to any of the claims.

[3] Airbnb also notes that its "Terms of Service," which is an online contract between Airbnb and its platform users, contains a choice-of-law provision.  *See* Doc. 96-3.  The contract states that its terms "will be interpreted in accordance with the laws of the State of California . . . without regard to conflict-of-law provisions."  *Id.* at p. 13, § 21.1.  However, the substantive provisions of this contract are not at issue in this case.  Plaintiffs' lawsuit does not allege a breach of contract.  The Court therefore concludes that the choice-of-law provisions in the contract are not applicable to this dispute.

disagreement, the law of the forum state applies. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 n.1 (7th Cir. 2009) (citing *Int'l Administrators, Inc. v. Life Ins. Co. of North America*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985)).

*Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 787 (N.D. Ill. 2020).

First, this Court must first determine whether there are any material differences between Arkansas and California law that might affect the outcome of the negligence claims.  If applying Arkansas law over California law will not change the outcome, then Arkansas law—the law of the forum state—should apply.  *See Int'l Adm'rs., Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 (7th Cir. 1985) (interpreting Illinois choice-of-law rules).  However, if differences do exist, the Court must apply the law of the state with the most significant relationship to the occurrence and the parties.

Here, there is no conflict between Arkansas and California law with respect to the elements of a cause of action for negligence.  Both states follow the Restatement and require proof of duty, breach, proximate cause, and damages.  *Peredia v. HR Mobile Servs., Inc.*, 25 Cal. App. 5th 680, 687 (Cal. Ct. App. 2018); *Coca-Cola Bottling Co. of Memphis v. Gill*, 352 Ark. 240, 254 (2003).  Furthermore, both states hold that there is no general duty to protect against third-party criminal acts, though a defendant may voluntarily assume a duty to protect if the criminal activity is sufficiently foreseeable.  *See Boren v. Worthen Nat'l Bank*, 324 Ark. 416, 425 (1996); *Sturgeon v. Curnutt*, 29 Cal. App. 4th 301, 306 (1994).  Since Arkansas and California law do not differ with respect to their interpretation of negligence claims, the Court will utilize Arkansas law to analyze the negligence claims made in the Amended Complaint.

Plaintiff's contention that Airbnb acted negligently hinges on whether Airbnb owed a duty of care, which Arkansas courts consider, generally, to be a question of law.  *See*

*Coca-Cola*, 352 Ark. at 254. There is no dispute that Airbnb is an online platform that allows homeowners to advertise their homes for rent to the general public and earns a commission fee for every booking.  See Doc. 92, p. 6, ¶¶ 24–25.  The parties also agree that, in general, "a defendant is under no duty to guard against risks it cannot reasonably foresee."  *Coca-Cola*, 352 Ark. at 254.  In the Amended Complaint, Plaintiffs assert that when Airbnb allowed the Argentine homeowners to use the online platform to advertise a home for rent, Airbnb assumed a duty to protect the ultimate renters—in this case, the Plaintiffs—from any crimes the Plaintiffs might suffer while staying at the home.

Plaintiffs use much of their briefing to discuss the concept of foreseeability.  They argue that Airbnb should have foreseen that travelers to the Buenos Aires area (and to the Puerto Panal neighborhood, in particular) would face a greater-than-average possibility of crime.  Because Puerto Panal's crime statistics were at Airbnb's disposal, Plaintiffs believe Airbnb should have strongly warned potential renters of the risk of renting this particular home or else should have denied the homeowners access to the Airbnb site.  Since Airbnb did neither, Plaintiffs believe Airbnb breached a duty of care owed to them and should be liable for all the damages Plaintiffs suffered as a result of the home invasion.

The first question the Court must ask is:  What duty of care did Airbnb breach?  On this point, Plaintiffs struggle mightily to fit the square peg of their unusual facts into the round hole of the established law.  Plaintiffs agree "there is generally no duty to protect others from criminal activity of third persons," but they argue that, in this case, Airbnb voluntarily assumed such a duty of care, and as a result, "liability [was] created by the negligent breach of that duty."  (Doc. 92, p. 8, ¶ 34).  Plaintiffs suggest that the Court view

8

the relationship between Airbnb and Plaintiffs as that of innkeeper/guest or business owner/invitee.  Neither duty fits the facts.  Though Plaintiffs label Airbnb as an "innkeeper," they do not claim Airbnb owns or manages any of the rental properties advertised on its online platform, nor do Plaintiffs provide the Court with an alternate, plausible framework for considering Airbnb an innkeeper.  By the same token, Plaintiffs label Airbnb a "business owner" that invites guests onto its physical property—though, of course, that did not happen in this case.  The Amended Complaint explains that "AIRBNB's business involves sending its . . . Guests *directly into premises owned and controlled by persons unknown to the Guests*"—and not by Airbnb.  (Doc. 92, p. 9, ¶ 34(b) (emphasis added)).

In the end, Plaintiffs have merely hand-waived the actual facts in their case to arrive at legal conclusions that suit their purposes.  They fail to point to any law or regulation that vests Airbnb with a particular duty of care stemming from a relationship with the users of its online platform.  But even if such a relationship did exist, there are no facts in the Amended Complaint to show Airbnb assumed a further duty to protect users from crimes committed by third parties.  Plaintiffs pin their hopes on Airbnb's "Trust and Safety" webpage, which explains the following steps Airbnb takes to try to keep its customers safe:

> **Risk scoring**
> Every Airbnb reservation is scored for risk before it's confirmed. We use predictive analytics and machine learning to instantly evaluate hundreds of signals that help us flag and investigate suspicious activity before it happens.
> **Watchlist & background checks**
> While no screening system is perfect, globally we run hosts and guests against regulatory, terrorist, and sanctions watchlists. For hosts and guests in the United States, we also conduct background checks.
> **Preparedness**
> We run safety workshops with hosts and leading local experts and encourage hosts to provide guests with important local information. We also

give any host who wants one a free smoke and carbon monoxide detector for their home.

**Secure payments**

Our secure platform ensures your money gets to the host—that's why we ask you to always pay through Airbnb and never wire money or pay someone directly.

**Account protection**

We take a number of measures to safeguard your Airbnb account, like requiring multi-factor authentication when a login is attempted from a new phone or computer and sending you account alerts when changes are made.

**Scam prevention**

Always pay and communicate directly through the Airbnb website or app. As long as you stay on Airbnb throughout the entire process—from communication, to booking, to payment—you're protected by our multi-layer defense strategy.

**We're here if you need us**

Our global team is standing by 24/7 in 11 different languages to help make things right with rebooking assistance, refunds, reimbursements, our $1 million dollar Host Guarantee, and insurance programs for both homes and experiences.

Just reach out if there's anything you need.

https://www.airbnb.com/trust (accessed July 22, 2022).

Plaintiffs interpret the above language to mean that Airbnb has a special relationship with users that involves either: (1) a duty to warn of specific risks of crime at certain rental properties or (2) an assumption of joint liability with the property owners for any unforeseen crimes that may occur at the property during the users' stay. However, the "Trust and Safety" page does not explicitly or implicitly state that Airbnb understands its role in relation to its users as analogous to an innkeeper and its guests or a business owner and its business invitees. In fact, the page says nothing at all about Airbnb's legal relationship to its users. No special relationship has been adequately pleaded.

Regardless, even if a special relationship *did* exist between Airbnb and its platform users, no facts in this case indicate that Airbnb voluntarily assumed a duty to protect them from unforeseen crimes. *Boren v. Worthen National Bank* stands for the proposition that

"foreseeability, and thus liability, is limited to situations where the business owner is aware of the imminent probability of specific harm to its customer." 324 Ark at 426.  In particular, "there will be no duty upon business owners to guard against criminal acts of a third party unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee." *Id.* (quotation marks and citation omitted).  If the Court were to assume for the sake of argument that Airbnb was in the same legal position as the owners of the property Plaintiffs rented, Plaintiffs admit there is no criminal history associated with that property before the date of the home invasion.  As for the Puerto Panal neighborhood at large, Plaintiffs note that three crimes occurred between 2013 and 2019:  (1) an incident of aggravated theft in the neighborhood in May 2013, (2) an incident of theft in July 2016, and (3) another incident of aggravated theft in October 2016.  (Doc. 92, p. 12, ¶ 45).   Plaintiffs were victims of a crime in Puerto Panal more than three years after the last reported crime in that neighborhood.

"For a duty to protect invitees from criminal acts by third persons to arise from prior criminal conduct, the prior crimes must be *violent* and *sufficiently numerous* and recent to put the landowner on notice that there is a likelihood of danger  . . . ."  *Boren*, 324 Ark. at 427 (quoting 3 *Premises Liability*, Second Edition, § 49 (1995)) (emphasis added).  The Amended Complaint does not reveal whether violence was associated with the three theft crimes that took place in Puerto Panal before 2019. Assuming, once again, for the sake of argument that those crimes *were* violent, the Court finds as a matter of law that three prior criminal events, occurring over the course of six years in the same general vicinity— but not in the specific location—is insufficient to place the landowner on notice of a likelihood of danger and trigger a duty to protect.  The Arkansas Supreme Court in *Boren*

was not persuaded that an armed robbery was reasonably foreseeable even though a similar armed robbery and shooting took place at the exact same location only three months prior. *Id.* at 426. The facts in the case at bar are insufficient—temporally and numerically—to create a duty to warn.

Assuming the facts in the Amended Complaint as true, the only individuals who may have owed Plaintiffs a duty of care were the homeowners themselves. Unfortunately for Plaintiffs, the owners live in Argentina, and this Court has no jurisdiction over them. For the reasons stated, Plaintiffs have failed to state facts to plausibly show that Airbnb was negligent. Accordingly, Counts I, III, V, VII, and IX are dismissed without prejudice for failure to state a valid claim.

**B. Vicarious Liability**

Plaintiffs' counsel admitted in briefing and during oral argument at the motion hearing that he was aware that "vicarious liability," as pleaded in Counts II, IV, VI, VIII, and X, was not a standalone cause of action. Plaintiffs asserted this claim in order to explain, factually and legally, why Airbnb should be held responsible for the acts and omissions of the Puerto Panal security guards, the owners of the home, and the Puerto Panal Property Owners' Association.

Though Plaintiffs contend there was an agency or employment relationship between Airbnb and some or all of these other Argentine parties, there are no facts to plausibly establish such a relationship. During oral argument, the Court asked Plaintiffs' counsel, "So, where have you factually pled the agency relationship between Airbnb and the guards at the neighborhood guard shack other than in a conclusory fashion?" And

counsel responded:  "Paragraph 201.  We specifically stated that information provided by Airbnb was given by the security guards to the assailants."

Paragraph 201 of the Amended Complaint states:

Defendants, and each of them, violated Plaintiffs' privacy rights by allowing an unwarranted intrusion into their private concerns and interests in unlawfully disclosing and disseminating their confidential information to the security company and guards and in turn the Assailants and in the guards' actions in sneaking up on the rental property and peering into the sliding door windows without consent.

(Doc. 92, p. 46, ¶ 201).  In reading Paragraph 201, one might reasonably ask why—and how—Airbnb disseminated Plaintiffs' information to the Argentine security company and guards.  It appears Plaintiffs believe that Airbnb is or was the security guards' employer. Paragraph 60 of the Amended Complaint states: "On information and belief, Plaintiffs are informed and believe that the security company and the Guards were employees or independent contractors and the agents of Defendants and each of them."  *Id.* at p. 17. The Amended Complaint does not explain exactly why Plaintiffs believe Airbnb, an online rental platform, directs the work of a group of Argentine security guards working at a residential neighborhood in Argentina.

At the motion hearing, the Court asked Plaintiffs' counsel to explain what facts supported Plaintiffs' claim that the guards were agents of Airbnb.  Counsel responded that because "the owners—the hosts—are responsible through the homeowners' association for paying for those security guards," it must be true that Airbnb, by extension, is "responsible for [the property owners] in their role as innkeepers—shared innkeepers."

According to the Restatement (Second) of Agency, which Arkansas has adopted, an agency relationship exists where an agent is authorized to act for the principal and the agent is subject to the principal's control.  *See Pledger v. Troll Book Clubs, Inc.*, 316 Ark.

195, 200 (1994).  Plaintiffs allege no facts suggesting the security guards were authorized to act for Airbnb or subject to Airbnb's control.  The Court finds that Plaintiffs' claims regarding the agency relationship between Airbnb and the Argentine parties are conclusory.  Accordingly, Counts II, IV, VI, VIII, and X are dismissed without prejudice for failure to state a claim.

### C.  Invasion of Privacy

Count XII is a claim for the violation of Plaintiffs' right to privacy.  The Court is still unclear—even after the hearing—about what Plaintiffs intended in bringing this claim.  They allege Airbnb violated their privacy rights "by unlawfully disclosing and disseminating their confidential information to the security company and guards and in turn the Assailants."  (Doc. 92, p. 46, ¶ 201).  Yet, there are no facts in the Amended Complaint to show that Airbnb disseminated any information to the security company, guards, or assailants.  Plaintiffs assume the guards and assailants knew personal details about them that assisted the criminals in committing the home invasion.  Plaintiffs then make the conclusory leap that it must have been *Airbnb* that supplied the criminals with that information—whatever it happened to be.

If Plaintiffs intended to state a claim for unlawful intrusion upon seclusion, the Amended Complaint never defined the nature of that intrusion.  If, instead, Plaintiffs meant to state a claim for unlawful public disclosure of a private fact (whatever that private fact happens to be), they did not plead several key elements of that tort, including that the private fact was not previously known to the public, that the disclosure of the fact would be considered highly intrusive by a reasonable person, and that the defendant knew or should have known that the fact in question was private. *Duggar v. City of Springdale*,

599 S.W.3d 672, 684 (Ark. Ct. App. 2020).  For all these reasons, Count XII is subject to dismissal for failure to state a claim.

### D.  Civil RICO

Count XI is a claim for civil RICO, which Plaintiffs agree is subject to dismissal. *See* Doc. 107, p. 35.

### E.  Lanham Act

Count XIII is a Lanham Act claim for false advertising under 15 U.S.C. § 1125.  The Lanham Act creates a civil action against "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact . . . which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities[.]"  *Id.*

Consumers do not have standing to bring a claim for false advertising under the Lanham Act.  Only competitors or commercial entities may bring such a claim.  *See Lexmark Intern., Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 131–32 (2014) ("We thus hold that to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales. A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act—a conclusion reached by every Circuit to consider the question.").

During the motion hearing, Plaintiffs' counsel conceded that Plaintiffs are not competitors of Airbnb.  They are consumers.  As Plaintiffs lack standing to bring a claim for false advertising, the claim is dismissed under Rule 12(b)(1).

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Dismiss (Doc. 95) filed by Defendants Airbnb Action LLC, Airbnb Payments, Inc., and Airbnb, Inc. is **GRANTED**. Counts I–XII are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(6) for failure to state a claim. Count XIII is **DISMISSED WITHOUT PREJUDICE** for lack of standing pursuant to Rule 12(b)(1).

**IT IS SO ORDERED** on this 27th day of July, 2022.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE